UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

TD AUTO FINANCE LLC,

                              Plaintiff,                    **OPINION AND ORDER**

             -against-                                      21 Civ. 9080 (AEK)

THE COUNTY OF PUTNAM,

                              Defendant.
--------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

    Plaintiff TD Auto Finance LLC ("TD Auto") brings this action against Defendant the

County of Putnam (the "County") asserting claims under 42 U.S.C. § 1983 and the New York

State Constitution, and for declaratory relief pursuant to 28 U.S.C. § 2201.  ECF No. 1

("Complaint" or "Compl.").  Currently before the Court are the parties' cross motions for

summary judgment.  ECF Nos. 26, 33.  For the reasons that follow, Plaintiff's motion is

GRANTED IN PART AND DENIED IN PART, and Defendant's motion is GRANTED IN

PART AND DENIED IN PART.

## I.  BACKGROUND

### A.  Factual Background

    The following facts are undisputed unless otherwise noted and are taken from Plaintiff's

Local Civil Rule 56.1 Statement, ECF No. 29 ("Pl.'s 56.1 Statement"), Defendant's Counter-

56.1 Statement, ECF No. 36 ¶¶ 1-44 ("Def.'s 56.1 Resp."), Defendant's Additional Statements of

Undisputed and Material Facts, ECF No. 36 ¶¶ 45-57 ("Def.'s 56.1 Statement"), Plaintiff's

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 14.

Counterstatement to Defendant's Additional Statements of Undisputed and Material Facts, ECF No. 40 ("Pl.'s 56.1 Resp."), and the exhibits submitted by the parties.

### 1.   The Parties and the Lease

TD Auto is an automotive finance company and is in the regular business of taking assignments of retail installment contracts relating to the purchases of motor vehicles, servicing those contracts, and holding liens on the vehicles to secure payment under those contracts.  Pl.'s 56.1 Statement ¶ 1.  The County is a municipal corporation organized and existing under the laws of the State of New York.  *Id.* ¶ 2.

On or about March 2, 2020, Ingersoll Auto of Danbury—a car dealership—sold a 2020 GMC Sierra bearing VIN 3GTU9CED1LG171828 (the "Vehicle") to an individual, Christopher Sutton, pursuant to a retail installment contract (the "Contract").  *Id.* ¶ 4; *see also* ECF No. 27 ("Gardiner Decl.") Ex. A; ECF No. 44 ("Duston Decl.") Ex. 4.  On or about the day that the Contract was signed by Mr. Sutton, Ingersoll Auto of Danbury assigned the Contract to TD Auto.  Pl.'s 56.1 Statement ¶ 5.  By way of that assignment, TD Auto obtained a security interest in and lien on the Vehicle.  *Id.* ¶ 6.  As of March 24, 2020 and at all relevant times thereafter, TD Auto had a perfected lien on the Vehicle, and that lien remained on the Vehicle at all times relevant to this action.  *Id.* ¶ 11.

Under the terms of the Contract, Mr. Sutton agreed to make 84 monthly payments of $688.54 beginning on April 1, 2020, *id.* ¶ 4; Gardiner Decl. Ex. A at TDAUTO_000002, and "agree[d] not to expose the [V]ehicle to misuse, seizure, confiscation, or involuntary transfer," *see* Pl.'s 56.1 Statement ¶ 9; Gardiner Decl. Ex. A §§ 2.b, 3.b.  The Contract states that in the event of a default, TD Auto was permitted to "take (repossess) the vehicle from [Mr. Sutton] if [TD Auto] do[es] so peacefully and the law allows it."  Gardiner Decl. Ex. A § 3.d.

### 2.    The County's Seizure of the Vehicle

On November 16, 2020, Mr. Sutton was arrested by the Putnam County Sheriff's Department for criminal possession of a controlled substance in the second degree, among other felony charges.  *See* Duston Decl. Ex. 4; *see also id.* Ex. 8.  In connection with Mr. Sutton's arrest, the Vehicle was seized, without a warrant, as evidence.  *See* Pl.'s 56.1 Statement ¶¶ 12, 25.  That same day, the Vehicle was towed from the scene of Mr. Sutton's arrest to be held in a secured lot controlled by the County.  *Id.* ¶ 13.  No hearing was held regarding the propriety of seizing the Vehicle, and the County did not provide any notice to TD Auto of the seizure at that time.  *Id.* ¶¶ 24, 26.  As of November 16, 2020, Mr. Sutton was in non-payment default of the terms of the Contract by virtue of the County's seizure of the Vehicle and assertion of a *de facto* possessory lien on the Vehicle.  *Id.* ¶ 9.  TD Auto initially learned that the County had seized and impounded the Vehicle on February 25, 2021, when Mr. Sutton contacted TD Auto by telephone. *Id.* ¶ 14.

The County held the Vehicle in connection with the prosecution of the criminal case against Mr. Sutton and for evidentiary purposes from the date of the seizure through on or about April 15, 2021.  Def.'s 56.1 Statement ¶ 45.  At that point, the County determined that it no longer needed to hold the Vehicle for purposes of Mr. Sutton's prosecution, and that it could commence civil forfeiture proceedings.  *Id.*  Accordingly, the County provided notice to Mr. Sutton that the Vehicle was subject to forfeiture, *id.*; the County did not provide any notice to TD Auto at this time, *see* Pl.'s 56.1 Statement ¶¶ 15, 16.  Although the County offered Mr. Sutton the opportunity to participate in a "Supreme Court forfeiture hearing"—which the County also

has referred to in the course of this action as a "*Krimstock* hearing"[2]—Mr. Sutton verbally

waived the right to such a hearing on April 15, 2021, and on May 4, 2021, executed a "Forfeiture

Stipulation & Waiver" relinquishing his ownership rights in the Vehicle.  Def.'s 56.1 Statement ¶

46; ECF No. 35 ("Randazzo Decl.") Ex. A; Duston Decl. Ex. 4.  The stipulation reads, in

relevant part:

> I understand that by virtue of its alleged use in a crime, I may have become liable
> for the forfeiture of the [Vehicle], or its value, which is $36,945.00, according to
> Kelley Blue Book, pursuant to Article 13-A of the New York Civil Practice Law
> and Rules.
>
> I have discussed this matter with my attorney and have concluded that the District
> Attorney would likely establish that the [Vehicle] is subject to forfeiture in an action
> relating to a post-conviction forfeiture crime, pursuant to CPLR Article 13-A.  I
> have, therefore, decided to avoid a civil lawsuit or repossession proceedings
> initiated by TD Auto Finance, LLC, (as they may have superior financial interest),
> by relinquishing the [Vehicle], to the Putnam County District Attorney's Office
> pursuant to CPLR Article 13-A.
>
> [. . .]
>
> **I FURTHER AGREE, if not in possession of the most current New York State
> title certificate, to afford Limited Power of Attorney to a member of the Putnam

---

[2] "*Krimstock*" is a reference to a series of cases decided in this District and in the Second
Circuit Court of Appeals between approximately 2000 and 2007.  *Krimstock v. Kelly*, 306 F.3d
40, 44 (2d Cir. 2002) ("*Krimstock I*"), involved the seizure of automobiles from individuals
arrested by the City of New York for driving while intoxicated and certain other crimes "for
which a motor vehicle could be considered an instrumentality"; there, the City "maintained
possession of the vehicles in the hope of one day gaining title to them by prevailing in civil
forfeiture proceedings."  In *Krimstock I*, the Second Circuit panel held that due process required
"that plaintiffs be afforded a prompt post-seizure, pre-judgment hearing before a neutral judicial
or administrative officer."  *Id.* at 67.  The purpose of such a hearing is to allow an individual to
"challenge the City's continued possession of [an individual's] vehicle during the pendency of
legal proceedings where such possession may ultimately prove improper and where less drastic
measures than deprivation *pendent lite* are available and appropriate."  *Id.* at 44.  After additional
litigation in the District Court and in the Second Circuit, a different Second Circuit panel issued
a decision in "*Krimstock III*" regarding different due process requirements for vehicles "seized as
'evidence'—*i.e.*, property that may be needed as evidence for criminal prosecution."  *See*
*Krimstock v. Kelly*, 464 F.3d 246, 248 (2d Cir. 2006).

> County District Attorney's Office, for the purpose of obtaining a duplicate title
> for ownership transfer.

Duston Decl. Ex. 4 (emphases omitted).

TD Auto was not provided any notice of, or an opportunity to participate in, any potential forfeiture or *Krimstock* hearing, and the County never filed a civil forfeiture action involving the Vehicle against Mr. Sutton.  Pl.'s 56.1 Statement ¶¶ 16-17; Def.'s 56.1 Resp. ¶ 16.

On or about April 29, 2021, the County, for the first time, attempted to contact TD Auto about the Vehicle by placing a phone call.  Pl.'s 56.1 Statement ¶ 15; Pl.'s 56.1 Resp. ¶ 47; Duston Decl. Ex. 8 at 1.  The County first successfully contacted TD Auto about its seizure of the Vehicle via a phone call to TD Auto's counsel on June 9, 2021.  Def.'s 56.1 Statement ¶ 48. The County first informed TD Auto in writing regarding the seizure of the Vehicle via a letter sent on or about June 11, 2021.  Pl.'s 56.1 Statement ¶ 18.  In that letter, the County wrote:

> As we discussed during our telephone conversation on Wednesday, the [Vehicle]
> was seized for evidence by a police agency in our jurisdiction consequent to its
> alleged use as the instrumentality of a felony crime committed in Putnam County
> by the defendant in the case of *People v. Christopher Sutton*.  Pursuant to Article
> 13-A of the Civil Practice Law and Rules, the vehicle is now subject to Asset
> Forfeiture by our office.
>
> Our records indicate that TD Auto Finance, LLC appears on the New York State
> title record as a lien holder for the above captioned vehicle.  At this time, I am
> requesting an accounting from you of the total outstanding amount due on the
> current loan, if any. . . .
>
> Additionally, please forward a copy of the portion of the contract between TD Auto
> Finance LLC and the vehicle owner, Christopher Sutton, which shows the default
> clauses, particularly the stipulation which indicates that the vehicle may not be
> seized in criminal activity, nor subject to forfeiture proceedings, if applicable, as
> well as any others that may apply at this time which may support your right to
> repossess the vehicle.  If repossessed, we will require payment of an Administrative
> Fee in the amount of $3,694.50 to cover all out-of-pocket expenses due the District
> Attorney's Office. . . .

Duston Decl. Ex. 5 (emphasis omitted); *see also* Pl.'s 56.1 Statement ¶ 19.  Thereafter, TD Auto

sought to recover the Vehicle from the County, but would not agree to pay the administrative fee

requested.  *See* Pl.'s 56.1 Statement ¶ 20.

On June 29, 2021, Larry Glasser, an assistant district attorney ("ADA") for the County,

emailed TD Auto's counsel regarding the Vehicle.  *See* Duston Decl. Ex. 6 at 5.  ADA Glasser

wrote that the County was "willing to facilitate [TD Auto's] repossession of the vehicle,

provided [TD Auto] can demonstrate their right to repossession" and that "[u]nder such

circumstances, the [District Attorney's] Office is entitled to recovery of an administrative fee to

account for [its] out-of-pocket expenses relating to the seizure and storage of the vehicle." *Id.*;

*see also* Pl.'s 56.1 Statement ¶ 31.  ADA Glasser further explained that:

> If [TD Auto] is unwilling to discuss such a fee, we will be compelled to submit a
> Garageman's Lien to the New York State [Department of Motor Vehicles] for the
> full amount of our expenses, *i.e.*: $65.00 per day storage fees and towing fees that
> approximate $500.00 plus, which adds up to a total of approximately $13,000.00.
> We would then obtain title to the vehicle, sell it at an auction, and [TD Auto] would
> receive any proceeds above and beyond that amount up to the balance of the loan
> on the vehicle.  It would then be up to [TD Auto] to pursue any deficiency from
> Mr. Sutton directly.

Duston Decl. Ex. 6 at 5.  In a subsequent email, ADA Glasser explained that "[t]he

administrative fee is a standard practice" and the County is "not treating this case any differently

from any other forfeiture of a vehicle that has an open lien on it." *Id.* at 4; Pl.'s 56.1 Statement ¶

32.  On July 7, 2021, TD Auto's counsel wrote back to ADA Glasser expressing TD Auto's

unwillingness to pay the requested administrative fee.  Duston Decl. Ex. 6 at 3-4.

On July 23, 2021, ADA Glasser again emailed TD Auto's counsel, repeating earlier

requests that TD Auto provide documentation regarding its lien on the Vehicle and an accounting

showing the outstanding balance due.  Def.'s 56.1 Statement ¶ 50; Duston Decl. Ex. 6 at 2.  The

July 23, 2021 email also advised that the District Attorney's Office was "preparing an action to

file in Putnam County Supreme Court granting us clean title and expunging the lien on this vehicle." Def.'s 56.1 Statement ¶ 50; Duston Decl. Ex. 6 at 2.  TD Auto's counsel responded that he was about to leave for vacation, but that he would gather the requested documents upon his return and that he hoped to "reach a resolution."  Duston Decl. Ex. 6 at 2.  ADA Glasser replied on August 11, 2021 to request the documents again; on August 25, 2021, ADA Glasser sent another email stating:

> It has been two weeks since my last email to you, and over a month since you indicated you would provide the requested materials in order to attempt to resolve this matter.  As we have not heard from you, we will be commencing an action in Supreme Court next week if I do not hear from you before then.  If your client no longer wants the vehicle back, please provide us with a lien release.

*Id.* at 1; Def.'s 56.1 Statement ¶ 53.  The following morning, TD Auto's counsel responded: "Sorry, Ive [*sic*] been buried- I will get this file and get to you."  Def.'s 56.1 Statement ¶ 54.  The parties exchanged additional emails between September and November 2021, in which the County continued to request documentation substantiating TD Auto's lien, and TD Auto reiterated its unwillingness to pay any fee in exchange for the Vehicle.  *See* ECF No. 35 ("Randazzo Decl.") Exs. E, F, G.

On November 5, 2021, TD Auto's counsel emailed the County advising that TD Auto had commenced this litigation.  Def.'s 56.1 Statement ¶ 55.  At no point between the seizure of the Vehicle in November 2020 and the filing of this lawsuit in November 2021 did the County initiate a forfeiture action to gain title of the Vehicle or conduct any other hearing related to the Vehicle.  *See* Pl.'s 56.1 Statement ¶¶ 17, 21; Duston Decl. Ex. 8 at 3.

As of December 1, 2021, Mr. Sutton was in payment default under the terms of the Contract and such default was never cured.  Pl.'s 56.1 Statement ¶ 9.

###### 3.      The County's Policies, Practices, and Customs

The County does not have any formal written policies or procedures for the handling of impounded vehicles seized pursuant to the arrests of the drivers of these vehicles.[3]  *See* Pl.'s 56.1 Statement ¶ 37; Duston Decl. Ex. 11 ("Locasio Dep.") at 109:21-112:12.  Nevertheless, the County acknowledges that it has standard polices, practices, and customs for the seizure, detention, and disposition of vehicles seized incident to arrest, and that its conduct in relation to the Vehicle was consistent with these standard polices, practices, and customs.  Pl.'s 56.1 Statement ¶¶ 23, 38.

It is the County's standard practice to notify lienholders of the seizure of vehicles not when those vehicles are initially seized, but rather at or around the time it determines that a vehicle may be subject to civil forfeiture.  *See id.* ¶¶ 24, 27.  Once the County has determined that a vehicle seized pursuant to a felony arrest is subject to forfeiture, it is the County's normal practice and procedure to notify the owner of the vehicle (*i.e.*, the driver/arrestee, such as Mr. Sutton) and to hold an initial hearing within 10 days.  *Id.* ¶ 28.  It is the County's normal practice and procedure to not notify a lienholder about this initial hearing.  *Id.*  If the driver/arrestee does not waive the initial hearing, it is the County's normal practice and procedure to move forward with a civil forfeiture action.  *Id.* ¶ 29.  If the driver/arrestee agrees to waive the initial hearing—as Mr. Sutton did here—the County's practice is to obtain a stipulation and waiver from the driver/arrestee relinquishing ownership, *see, e.g.*, Duston Decl. Ex. 4, and then to contact any lienholders, Pl.'s 56.1 Statement ¶ 30.  The County does not initiate forfeiture proceedings as to

---

[3] In connection with its motion, the County submitted "a copy of a publication/training material entitled 'Asset Forfeiture for Small Counties' authored by ADA Heather M. Abissi of the Putnam County District Attorney's Office."  Randazzo Decl. ¶ 10 & Ex. H.  Though the County attached these materials to its motion papers, it does not assert that these materials reflect the official policies or practices of the County.  *See* Randazzo Decl. ¶ 10.

the lienholder's interest in the vehicle.  *Id.*  Instead, once a lienholder is notified that the County is in possession of a vehicle, the County typically will offer a lienholder the opportunity to gain possession of the vehicle in exchange for an administrative fee.  *See id.* ¶¶ 31-33.  The County does not arrange for any hearing in front of a judge or other neutral arbiter to determine the propriety of its request to lienholders to pay an administrative fee in exchange for possession of a vehicle.  *Id.* ¶ 34.

In instances where a lienholder does not agree to pay an administrative fee to the County, the next step in the County's policy and procedure is not to file a forfeiture action, but rather to complete Department of Motor Vehicles paperwork in order to be able to hold a "garage lien sale" of the vehicle.  *Id.* ¶ 35.  The final steps in the County's policy and procedure are to auction the vehicle, retain the proceeds to cover its own expenses, and provide any additional amounts to any lienholders.  *Id.* ¶ 36.  Although this is the County's policy and procedure, the County has never auctioned a vehicle pursuant to this procedure because in all cases other than this one, the County has negotiated a resolution with the lienholder before having to follow through with this course of action.  *Id.*; Locasio Dep. at 95:12-96:7.

### 4.    TD Auto's Claimed Damages

The parties agree that the Kelley Blue Book Official Guide ("Kelley Blue Book") accurately reflects the value of used vehicles, including the Vehicle.  Pl.'s 56.1 Statement ¶ 40. The parties do not agree, however, as to what the Kelley Blue Book indicates regarding the extent to which the value of the Vehicle depreciated while in the County's custody.

The parties agree that the Vehicle's trade-in value "in or about 2021" was $36,945.00.[4]
*See id.* ¶ 41.  According to TD Auto, the Vehicle's trade-in value depreciated approximately
$4,316.00 between June 2021—the time the County demanded payment of an administrative
fee—and October 25, 2022, shortly before TD Auto filed its motion for summary judgment.
Gardiner Decl. ¶ 15; *see* Pl.'s 56.1 Statement ¶¶ 42-43 & Exs. 13-14.  The County maintains that
the Vehicle's trade-in value as of January 6, 2023—the date the County filed its cross motion—
was $36,914.00, and accordingly that the Vehicle only had depreciated in value by $31.00 since
in or about 2021.  Def.'s 56.1 Resp. ¶¶ 42-43; *see* Randazzo Decl. Ex. B.

### B. Procedural History

TD Auto moved for summary judgment as to Counts I and III of the Complaint on
November 22, 2022.  ECF Nos. 26 (Notice of Motion), 28 ("Pl.'s Mem.").  The County filed its
opposition and its cross-motion seeking summary judgment as to all counts on January 6, 2023.
ECF Nos. 33 (Notice of Motion), 34 ("Def.'s Mem.").  TD Auto filed its opposition and reply on
February 17, 2023, ECF No. 39 ("Pl.'s Reply"), and the County submitted its reply on March 17,
2023, ECF No. 42 ("Def.'s Reply").

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be
granted "if the movant shows that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

---

[4] Neither party provided a precise date for when this value was calculated.  The document
cited by TD Auto for this proposition is a printout from the Kelley Blue Book website bearing
the date November 23, 2020.  *See* Duston Decl. Ex. 13.  The Court notes that the $36,945.00
figure also was referenced in the Forfeiture Stipulation & Waiver signed by Mr. Sutton on May
4, 2021 and was attributed to the Kelley Blue Book, but there is no indication in that document
of when that Kelley Blue Book valuation was obtained.  *See* Duston Decl. Ex. 4.

*v. Catrett*, 477 U.S. 317, 320-23 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court is required to "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 97 (2d Cir. 2001); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764 (2d Cir. 1998); *see also Anderson*, 477 U.S. at 261 n.2.  A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials" cannot "create" genuine disputes of material fact "where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks omitted).  Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255; *accord Williams v. N.Y.C. Housing Auth.*, 61 F.4th 55, 76 (2d Cir. 2023).  "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 975 (2d Cir. 1992) (citing *H.L. Hayden Co. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989)).  Where both parties move for summary judgment, "the court evaluates each party's motion 'on its own merits,' and 'all reasonable inferences' are drawn 'against the party whose motion is under consideration.'" *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## III.     DISCUSSION

### A.     Section 1983 (Count I)

TD Auto's first cause of action is for "violation of civil rights" pursuant to 42 U.S.C. §

1983.  Compl. ¶¶ 49-50.  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the United
> States . . . to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  To prevail on a claim arising under Section 1983, a plaintiff must prove that

the conduct at issue was "committed by a person acting under color of state law" and "deprived

[the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the

United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quotation marks omitted).

There is no dispute that the County's actions in this matter were undertaken under color of state

law.  *See* Def.'s 56.1 Resp. ¶¶ 23-38 (conceding that the County's relevant actions were all

undertaken pursuant to the County's standard policies, practices, and customs).  The only

remaining question before the Court as to Count I is whether the County's actions deprived TD

Auto of its constitutional rights.

At issue here are the County's policies, practices, and customs to: (i) not notify

lienholders that a vehicle has been seized in connection with the driver's arrest until the County

determines that the vehicle may be subject to forfeiture; (ii) notify the driver/arrestee but not

notify lienholders about any potential initial hearing regarding the forfeiture of the vehicle; (iii)

in circumstances where the driver waives the right to an initial hearing and stipulates to the

forfeiture of his or her interest in the vehicle, offer to provide the vehicle to a lienholder in

exchange for an "administrative fee" without any hearing regarding the fee; and (iv) if the

lienholder refuses to pay the fee, to hold a "garage lien sale" of the vehicle without any hearing or forfeiture proceeding.  *See* Pl.'s 56.1 Statement ¶¶ 17, 18, 21, 27, 35; Pl.'s 56.1 Resp. ¶ 48.

TD Auto alleges in the Complaint that the County's policy "violate[s] the Contracts Clause of Article I, Section 10, of the United States Constitution, as well as the Due Process Clause of the Fourteenth Amendment and the prohibition of unreasonable seizures of the Fourth Amendment," Compl. ¶ 50, but TD Auto has only moved for summary judgment on this claim based on alleged violations of the Fourteenth and Fourth Amendments, *see* Pl.'s Mem. at 8-24; Pl.'s Reply at 12 n.8.  The County also has moved for summary judgment as to the first claim, arguing that TD Auto's Section 1983 cause of action must be dismissed whether it is brought as an alleged violation of the Contracts Clause, Fourteenth Amendment, or Fourth Amendment. *See* Def.'s Mem. at 2-10.

### 1.    Fourteenth Amendment—Procedural Due Process[5]

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law."  U.S. Const. amend. XIV § 1.  "In adjudicating due process claims, '[courts] consider two distinct issues: 1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause; and, if so, 2) whether existing state procedures are constitutionally adequate.'"  *Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 190 (2d Cir. 2007) (quoting *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005)).

---

[5] In the Complaint, TD Auto does not specify whether its Fourteenth Amendment allegations are based on procedural or substantive due process violations.  *See* Compl. ¶¶ 49-50. In its motion papers, TD Auto refers to alleged violations of its "procedural due process" rights. *See* Pl.'s Mem. at 26; Pl.'s Reply at 4.

In this case, the answer to the first question is clear: as a lienholder, TD Auto has, at a minimum,[6] a protected "property interest in the present value" of the Vehicle.  *Id.* at 191.  The Second Circuit has made clear, in the context of vehicles seized by government actors, that "a security interest is indisputably a property interest protected by the Fourteenth Amendment.  A secured creditor has two rights: the contractual right to repayment of the debt owed and the property right to the collateral that secures the debt in the event of non-payment."  *Id.* (cleaned up); *see also* Pl.'s 56.1 Statement ¶¶ 5-8.  Moreover, delays in the eventual disposition of a seized asset can amount to a deprivation of a lienholder's property interest.  *Ford Motor Credit Co.*, 503 F.3d at 192 ("not only is the present value of the [lienholder's] claim diminished by the indeterminacy of its eventual realization, but [the lienholder's] property interest in the underlying asset suffers, as the vehicle depreciates over time").

The Court must next determine whether TD Auto received constitutionally adequate process.  In general, "individuals must receive notice and an opportunity to be heard before the Government deprives them of property."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).  "Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is provided before an individual is finally deprived of the property interest.'"  *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (cleaned up) (quoting *Brody v. Vill. of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005)); *see also Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its

---

[6] Because TD Auto's interest in the present value of the Vehicle is a well-established protected property interest, the Court need not reach the issue of whether TD Auto had any other protected property interests in the Vehicle resulting from the Contract.  *See* Pl.'s Mem. at 10 (arguing, among other things, that TD Auto had an interest in "access to its collateral upon the occurrence of a default").

constitutional obligations by providing the latter.").  "[D]ue process is flexible and calls for such

procedural protections as the particular situation demands."  *Nnebe*, 644 F.3d at 158 (cleaned

up).  "In determining how much process is due, a court must weigh (1) the private interest

affected, (2) the risk of erroneous deprivation through the procedures used and the value of other

safeguards, and (3) the government's interest."  *Spinelli v. City of New York*, 579 F.3d 160, 170

(2d Cir. 2009) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  These factors are

commonly referred to as the *Mathews* balancing test.

  Because the County does not have specific statutes, code provisions, or other written

procedures for the handling of vehicles seized incident to arrest, the Court must rely on the

County's statements and admissions in this litigation regarding its policies, practices, and

customs to assess whether the County has afforded TD Auto the required due process of law.

  **a.**  **Notice of the Seizure**

  TD Auto was not notified by the County of the seizure of the Vehicle until June 9, 2021

(by telephone) and June 11, 2021 (by letter), approximately seven months after the Vehicle was

seized.  Def.'s 56.1 Statement ¶ 48; Pl.'s 56.1 Statement ¶ 18.  The County does not dispute that

it was required to notify TD Auto of the seizure, but argues the notice it provided was adequate.[7]

---

[7] The County asserts that it "followed the process and procedures set forth in NY CPLR Article 13-A."  Def.'s Mem. at 2-3.  Article 13-A of the CPLR, entitled "Proceeds of a Crime – Forfeiture," governs civil forfeiture actions in New York State.  Though the County references Article 13-A extensively throughout its papers, it fails to cite to a single provision of the 44-section Article that it supposedly followed.  *See id.* at 1, 2, 3, 4, 5, 6, 8, 9; Def.'s Reply at 2, 3. Because the County has failed to identify any particular provisions of Article 13-A that it followed in connection with the seizure of the Vehicle, and because TD Auto has not argued that CPLR 13-A is unconstitutional on its face, the Court has not evaluated the extent to which Article 13-A complies with constitutional due process requirements.  Rather, the focus here is on the County's polices, practices, and customs, and whether the County's conduct in accordance with those polices, practices, and customs in the circumstances presented by this case comported with the due process obligations of the Fourteenth Amendment.

The County attempts to justify the delay by asserting that it *did* notify TD Auto once it "determined it no longer required to hold the [V]ehicle in furtherance of the prosecution," purportedly in accordance with *Krimstock I*.  Def.'s Mem. at 4-5; Def.'s 56.1 Statement ¶ 45. But even measuring from April 15, 2021—the day the County provided notice to Mr. Sutton that the Vehicle was subject to forfeiture, *see* Pl.'s 56.1 Statement ¶¶ 15, 16—the County did not actually notify TD Auto about the seizure for 55 days.

Whether measured from the date of seizure or from the date the County determined it no longer needed the Vehicle for purposes of prosecuting Mr. Sutton, the substantial delay in notifying TD Auto of the seizure of the Vehicle does not comport with due process.  *See Ford Motor Credit*, 503 F.3d at 192 (explaining that "delay" implicates a lienholder's Fourteenth Amendment rights in this context); *id.* at 188 (noting that New York City affords notice of the seizure, "shortly after" the seizure, to "various interested parties, including in many cases the holder of a security interest in the vehicle" in advance of a *Krimstock* hearing to test the probable validity of the City's deprivation of the vehicle); *Toyota Lease Tr. v. Vill. of Freeport*, No. 20-cv-2207 (DG) (SIL), 2023 WL 4443992, at *10 (E.D.N.Y. Jan. 24, 2023) (49-day delay between seizure and notice to lienholder did not comply with due process), *adopted by* 2023 WL 4449333 (E.D.N.Y. Mar. 30, 2023); *HVT, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-cv-5867 (MKB) (VMS), 2018 WL 3134414, at *15 (E.D.N.Y. Feb. 15, 2018) (period for "proper notice and a hearing" is no more "than a few days"), *adopted by* 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018); *Am. Honda Fin. Corp. v. Twp. of Aston*, 546 F. Supp. 3d 371, 381 (E.D. Pa. 2021) (finding that a "delay of twenty-five days before even attempting to notify lienholders" did not comport with due process) (collecting cases); *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 288-89 (S.D.N.Y. 2010) ("Since at least the Second Circuit's 2006 *Krimstock* decision, it has

16

been clear that owners of vehicles that have been seized as evidence in criminal cases are entitled to notice of their right to a hearing and 'some *immediate* judicial review of the retention [of their vehicle].'" (emphasis added) (quoting *Krimstock III*, 464 F.3d at 255)); *cf. Spinelli*, 579 F.3d at 173 ("although due process may tolerate some period of delay between a deprivation of property and a hearing, there is no justification for indeterminately delaying a hearing . . . while the investigation runs its course").

The County's policy, practice, and custom is to not notify lienholders of a seizure until it has satisfied its obligations under *Krimstock*.  *See* Pl.'s 56.1 Statement ¶¶ 28, 30; Def.'s 56.1 Statement ¶ 46 (explaining that it is the County's normal practice and procedure not to notify lienholders of initial forfeiture hearings, and referring to such hearings as *Krimstock* hearings). Though not determinative, it is nevertheless noteworthy that this policy, practice, and custom is in tension with multiple elements of the County's own training materials, which state that: (i) "[p]rompt notice is provided to all persons with an interest in a seized vehicle so that they can appear at a *Krimstock* hearing to be heard and establish that their possessory interest in the vehicle outweighs the County's interest in deterring future criminal conduct and safeguarding the potential proceeds"; and (ii) "notice of the date, time, and place of the hearing is provided at the time of the seizure, and the hearing date is set within 10 business days of the seizure, regardless of *whether or not defendant has requested the hearing*."  Randazzo Decl. Ex. H at PCDA0101 (emphasis in original).  Regardless, the critical point for purposes of this case is that application of the County's standard policies, practices, and customs here resulted in substantial and unacceptable delay of numerous weeks, if not numerous months, before TD Auto was notified by the County that the Vehicle had been seized.

Contrary to the County's protestations, it is of no consequence in the due process analysis that Mr. Sutton informed TD Auto of the seizure of the Vehicle in February 2021. *See* Def.'s Mem. at 6. The fact that TD Auto fortuitously learned that the Vehicle had been seized from Mr. Sutton did not relieve *the County* of its obligation to provide adequate notice to TD Auto regarding the seizure.[8] *See Toyota Lease Tr.*, 2023 WL 4443992, at *10 ("Even if [the private towing company] provided notice via letter five days after it impounded the Vehicle, it did not provide opportunity for a hearing, and as [the village defendant] admits, [the towing company] did not have authority to release the Vehicle pursuant to its towing agreement with the Village."); *Ezagui*, 726 F. Supp. 2d at 289 n.11 (explaining that the fact that plaintiff may "have become aware of the retention of his vehicle before he chose to contest the retention" is irrelevant because "[t]he relevant inquiry [ ] is whether [d]efendants complied with their obligation to provide the proper notice at the time of seizure"); *cf. Spinelli*, 579 F.3d at 172 ("The fact that Spinelli's counsel eventually learned of the specific nature of the charges after meeting on various occasions with the City does not obviate the City's failure to provide adequate notice of those charges.").

---

[8] Under certain circumstances not remotely analogous to the facts presented here, courts have rejected due process claims based on lack of notice where interested parties had received actual notice of a seizure in such time and in such manner as to allow the interested party to pursue its rights with respect to the property. *See United States v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d 472, 482 (2d Cir. 1992) (rejecting an argument that the government denied a claimant due process by failing to publish a notice of a seizure, given that the claimant had actual notice of the seizure and filed a claim to the seized property). The County has not shown that TD Auto's knowledge of the seizure in February 2021, in the absence of any information regarding how to contest the retention or otherwise pursue its rights, amounts to sufficient notice.

b.     **Opportunity to Be Heard Prior to Permanent Deprivation**

The County's policy not to provide any sort of hearing for a lienholder under these circumstances is equally problematic.  The law is clear that some form of hearing is required—either pre- or post-seizure—before an individual or entity is finally deprived of a property interest, and that the absence of any hearing whatsoever necessarily will fail the *Mathews* balancing test.  *See Mathews*, 424 U.S. at 333 ("[The Supreme Court] consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."); *Propert v. Dist. of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991) ("[T]he amount of process required can never be reduced to zero—that is, the government is never relieved of its duty to provide . . . *some* opportunity to be heard prior to final deprivation of a property interest." (emphasis in original)); *HVT, Inc.*, 2018 WL 3134414, at *9 ("[T]he question is whether Defendant can summarily deprive Plaintiff of its property without any opportunity for a hearing. The law is quite clear that it cannot.").

Yet the County's policies, procedures, and customs do not provide for lienholders to have any opportunity to participate in a hearing before the County disposes of a vehicle seized incident to arrest.  As discussed above, the County does not even notify lienholders of a seizure until it has satisfied any hearing obligations imposed by the *Krimstock* cases—a driver/arrestee will be notified and given an opportunity to participate in an initial hearing, but a lienholder will not.  *See* Pl.'s 56.1 Statement ¶¶ 28, 30; Def.'s 56.1 Statement ¶ 46.  If the driver/arrestee agrees to waive the initial hearing—as Mr. Sutton did here—the County does not initiate forfeiture proceedings as to the lienholder's interest in the vehicle.  Pl.'s 56.1 Statement ¶ 30.  Instead, the County typically will offer a lienholder the opportunity to gain possession of the vehicle in exchange for an administrative fee, but without any hearing in front of a judge or other neutral

19

arbiter to determine the propriety of the County's request to the lienholder to pay an administrative fee in exchange for possession of a vehicle.  *Id.* ¶¶ 31-34.  Where, as here, a lienholder does not agree to pay the administrative fee, the next step in the County's policy and procedure is not to file a forfeiture action, but rather to complete Department of Motor Vehicles paperwork in order to be able to hold a "garage lien sale" of the vehicle.  *Id.* ¶ 35.  The final steps in the County's policy and procedure are to auction the vehicle, retain the proceeds to cover its own expenses, and provide any additional amounts to any lienholders.  *Id.* ¶ 36.  At no point in this process does the County contemplate any sort of hearing at which a lienholder would have an opportunity to challenge any aspect of the seizure, the assessment of an administrative fee,[9] or the County's right to dispose of a vehicle seized incident to arrest.

The County argues that TD Auto is equally at fault for any due process violation because it "requested that the County *not* initiate civil forfeiture proceedings, in which Plaintiff could have challenged the civil forfeiture as the lienholder, pending further negotiation with a hope for resolution."  Def.'s Mem. at 7 (citing Def.'s 56.1 Statement ¶¶ 49-54).  This argument is not persuasive.  On two occasions after notifying TD Auto of the seizure, ADA Glasser wrote to TD Auto's counsel stating that in the absence of any communication from TD Auto, the County would file an action "granting [the County] clean title and expunging the lien" on the Vehicle.

---

[9] The practice of charging some form of fee in this context not necessarily improper.  *See Ford Motor Credit*, 503 F.3d at 194 (observing, in *dicta*, that "one would think that the City would wish to prosecute forfeiture cases rapidly, since it obtains at least ten percent of the eventual sale proceeds").  But the County's attempt to impose a fee here—where it has not filed and completed a forfeiture proceeding; where it only notified TD Auto of the seizure months after the seizure took place, long after towing and significant storage fees have accrued; and where TD Auto has no opportunity to contest the imposition of fees or the rate of accrual—is problematic.  *See HVT, Inc.*, 2018 WL 3134414, at *15 ("charges for the storage of the Subject Vehicle must be voided as Plaintiff did not receive timely notice of the towing, and it did not have an opportunity to contest the imposition of fees or the rate of accrual").

Duston Decl. Ex. 6 at 1 ("As we have not heard from you, we will be commencing an action in Supreme Court next week if I do not hear from you before then."), 2 ("You have not provided this and it has been more than two weeks since my last e-mail to you, so we are preparing an action to file in Putnam County Supreme Court granting us clean title and expunging the lien on this vehicle.").  In response to both communications, TD Auto's counsel stated that he would endeavor to gather the documents the County requested in the hopes of "reach[ing] a resolution." *Id.* at 2.  These exchanges cannot seriously be described as an affirmative request by TD Auto that the County not proceed with a forfeiture action.  Regardless, the County's vague threats in 2021 to file "an action" at some undefined point in the future are no substitute for an actual policy or procedure that would ensure that a lienholder had a formal, well-defined opportunity to be heard prior to any deprivation of property.  *See Ford Motor Credit*, 503 F.3d at 193-95 (holding that when lienholder makes a demand on a vehicle, city must "commence the forfeiture action within twenty-five days" of the demand).  While the County now asserts that TD Auto, as a lienholder, would have been provided with notice and an opportunity to be heard at any forfeiture proceedings, *see* Def.'s Mem. at 7-9 (citing *Ford Motor Credit*, 503 F.3d at 191-92), this rings hollow.  The County has conceded that where, as here, a lienholder does not agree to pay the administrative fee, the next step in the County's policy and procedure is *not* to file a forfeiture action, but rather to complete Department of Motor Vehicles paperwork in order to be able to hold a "garage lien sale" of the vehicle.  Pl.'s 56.1 Statement ¶ 35.  The notion that the County—contrary to its admitted policies, practices, and customs—"attempted to commence" a forfeiture action, Def.'s Mem. at 9, is nonsensical, especially when the County made clear that it was following its standard practices in connection with the Vehicle, *see* Duston Decl. Ex. 6 at 4.  There was nothing preventing the County from filing a forfeiture action as to the Vehicle had it

sought to do so, other than the reality that its standard policies, practices, and customs did not contemplate such a filing.

In sum, consistent with and as a result of the County's policies, practices, and customs, TD Auto did not have any formal opportunity to be heard regarding its interest in the Vehicle.

**c.    The *Mathews* Factors**

Application of the *Mathews* factors requires a finding that the County failed to provide due process of law to TD Auto, as all three factors favor TD Auto.

First, the private interest at stake—TD Auto's interest in the present value of the Vehicle—is "considerable." *See Ford Motor Credit*, 503 F.3d at 194 ("[lienholder's] interest in the present value of a seized vehicle, while not as great as the interest of the vehicle's owner in possession of a seized vehicle . . . is still considerable").

Second, "the erroneous risk of deprivation" is high.  Pursuant to the County's current policies, practices, and customs, a lienholder may not receive notice of a seizure until substantially after the Vehicle has been impounded, and will have no opportunity to present any argument before a neutral arbitrator about whether they County is actually entitled to possess the Vehicle, assess an administrative fee, or dispose of the Vehicle, because a driver/arrestee may waive a *Krimstock* hearing (as Mr. Sutton did here), after which the County does not commence forfeiture proceedings.  *See* Pl.'s 56.1 Statement ¶ 30.

Third, the Court must balance any legitimate interests that the County may have against the burden that would be placed on the County if it were required to provide additional procedural safeguards.  *See Am. Honda Fin. Corp. v. City of Revere*, 471 F. Supp. 3d 399, 408 (D. Mass. 2020).  The County contends that its interests—"to hit defendants in their pocket; take the profit out of crime; and more importantly, with respect to vehicles: it takes away the

instrumentality of their crimes"—are great.  Def.'s Mem. at 6 (cleaned up).  But while the
County does have legitimate interests in civil forfeiture and public safety writ large, these
interests do not justify a series of policies, practices, and customs that substantially delay notice
to lienholders regarding vehicle seizures, and fully deny lienholders any opportunity to be heard
with respect to the propriety of the seizure, the continued retention of the vehicle, the
appropriateness of charging an administrative fee in exchange for return of the vehicle, or the
disposition of the Vehicle.  *Cf. Toyota Lease Tr.*, 2023 WL 4443992, at *10 ("Applying the
*Mathews* factors, Plaintiff's property interests in the Vehicle outweighs Freeport's interest in
collecting fines, and the undisputed lack of hearing requirement under the [ ] policy violates due
process.").  The County's interests are therefore outweighed by its unlawful abrogation of TD
Auto's right to due process of law.

* * * * * * * * * *

For all of the reasons set forth above, and after considering the *Mathews* factors, the
Court finds that the County did not provide TD Auto with due process of law as required by the
Fourteenth Amendment, both because TD Auto was not timely notified about the seizure of the

Vehicle and because TD Auto was not provided with an opportunity to be heard at any point in connection with the seizure.[10]

### 2.   *Monell* Liability

The County argues that even if TD Auto's rights were violated, TD Auto has failed to establish that the County is subject to municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  *See* Def.'s Mem. at 7.  "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."  *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).  "[A] plaintiff must demonstrate that through its *deliberate* conduct, the municipality was the moving force behind the injury alleged."  *Id.* at 98 (emphasis in original) (quotation marks omitted).  "Inherent in the principle that a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation, is the concept that the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022) (cleaned up).

---

[10] Because the Court finds that the County's policies, procedures, and customs violate the Fourteenth Amendment, it need not consider whether those policies, procedures, and customs also violate the Fourth Amendment.  *See* Pl.'s Mem. at 11-18; *Am. Honda Fin. Corp.* (Revere), 471 F. Supp. 3d at 410 n.4; *Am. Honda Fin. Corp.* (Aston), 546 F. Supp. 3d at 384.

As for the Contracts Clause theory of liability that TD Auto advanced in the Complaint, *see* Compl. ¶¶ 37-48, 50, TD Auto concedes in its opposition/reply brief that this theory is moot, *see* Pl.'s Reply at 12 n.8.  Even though the County seeks summary judgment as to the Contracts Clause theory as part of its argument as to Count I, *see* Def.'s Mem. at 10, no separate judgment need be entered regarding the Contracts Clause specifically, because Plaintiff is entitled to summary judgment on Count I based on the County's violation of Plaintiff's Fourteenth Amendment rights.  To be clear, however, Plaintiff's Contracts Clause theory is no longer part of this case and is not a basis for relief.

Here, because the County admits that its treatment of the Vehicle followed its own standard policies, practices, and customs for dealing with vehicles seized incident to arrest, *see* Pl.'s 56.1 Statement ¶¶ 23-38; Def.'s 56.1 Resp. ¶¶ 23-38, municipal liability attaches, *Monell*, 436 U.S. at 690; *see also HVT, Inc.*, 2018 WL 3134414, at \*4 (finding *Monell* liability where governmental entity admitted it was acting under its official policies when it seized and attached a lien to a vehicle, thereby depriving the plaintiff of a property interest); *Am. Honda Fin. Corp.* (Aston), 546 F. Supp. 3d at 383-84 (finding *Monell* liability where municipality admitted it was acting pursuant to official policy in seizing vehicle, thereby depriving the plaintiff of a property interest). The County has conceded that its conduct in relation to the Vehicle complied with its standard policies, practices, and customs for the seizure, detention, and disposition of vehicles seized incident to arrest. Pl.'s 56.1 Statement ¶ 23; Duston Decl. Ex. 3 ¶ 11. Yet as discussed, in following those policies, practices, and customs, the County violated TD Auto's due process rights by failing to timely notify TD Auto of the seizure of the Vehicle and failing to provide any opportunity for a hearing regarding the seizure or disposition of the Vehicle. *See supra* Section III.A.1.

Despite acknowledging that it did, in fact, follow its standard policies, practices, and customs with respect to the seizure of the Vehicle, the County attempts to evade municipal liability by asserting that it deviated from its typical practices by unsuccessfully attempting to contact TD Auto *before* Mr. Sutton waived a *Krimstock* hearing. *See* Def.'s Mem. at 6-7 ("the County attempted to contact the Plaintiff prior to the *Krimstock* hearing, and prior to Sutton's waiver of said hearing"). But this argument is belied by the record—as the County has stated, "Sutton's attorney verbally waived Sutton's right to a forfeiture hearing, also called a *Krimstock* hearing, on April 15, 2021." Def.'s 56.1 Statement ¶ 46; *see also* Randazzo Decl. Ex. A; Duston

Decl. Ex. 8 at 1.  It was not until two weeks *after* Mr. Sutton waived the hearing—on April 29,

2021—that a representative from the County attempted to contact TD Auto by placing a phone

call, which went unanswered.[11]  Def.'s 56.1 Statement ¶ 47; Locasio Dep. at 35:5-24.  This

timeline is entirely consistent with the County's admitted policy of only contacting lienholders

after *Krimstock* proceedings have been held or waived by a vehicle's owner.  *See* Pl.'s 56.1

Statement ¶¶ 28-30.  In short, the County has not pointed to any deviation from its standard

policies, practices, and customs here, and the inescapable conclusion is that these policies,

practices, and customs were the moving force behind the violations of TD Auto's Fourteenth

Amendment procedural due process rights.  TD Auto therefore has established that the County

should be held liable pursuant to *Monell*.

* * * * * * * * * *

Accordingly, TD Auto's motion for summary judgment as to Count I of the Complaint for

a violation of 42 U.S.C. § 1983 is GRANTED.

**B.    New York State Constitution (Count II)**

The County moves for summary judgment as to TD Auto's claim in Count II of the

Complaint, which is brought pursuant to the New York State Constitution.  Def.'s Mem. at 10-

11.  "The New York State [C]onstitution's guarantees of equal protection and due process are

virtually coextensive with those of the federal Constitution."  *Febres v. City of New York*, 238

F.R.D. 377, 392 (S.D.N.Y. 2006).  "District courts in this circuit have consistently held that there

is no private right of action under the New York State Constitution where, as here, remedies are

---

[11] While the attempted contact on April 29, 2021 did take place before Mr. Sutton signed the Forfeiture Stipulation & Waiver relinquishing his ownership rights in the Vehicle on May 4, 2021, there is no dispute that Mr. Sutton, through counsel, already had agreed to waive his hearing rights on April 15, 2021, prior to the attempted phone call to TD Auto.

available under § 1983." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quotation marks omitted) (collecting cases); *accord Santander Consumer USA, Inc. v. City of Yonkers*, No. 20-cv-4553 (KMK), 2022 WL 4134718, at *9 (S.D.N.Y. Sept. 12, 2022).

Because the Court already has determined that TD Auto is entitled to summary judgment on its Section 1983 claim based on the County's due process violations, the County's motion for summary judgment is GRANTED as to TD Auto's claim brought under the New York State Constitution, and Count II of the Complaint is DISMISSED.

### C.   Declaratory Judgment (Count III)

TD Auto seeks summary judgment on its "claim" for declaratory relief in Count III of the Complaint, and states that the proposed declaratory judgment will guide the County "in formulating a policy that is not violative of lienholders' constitutional rights, and would settle this ongoing issue." Pl.'s Mem. at 30 (emphasis omitted). While TD Auto seeks a declaratory judgment that the County's policies, practices, and customs are unconstitutional, it asks the Court to stop short of re-writing the County's policies so that the County's "legislative branch and executive branch decision makers can go back to the proverbial 'drawing board' and try again." *Id.* at 30-31.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, permits courts to "declare the rights and other legal relations of any interested party seeking such a declaration [in] a case of actual controversy." 28 U.S.C. § 2201(a). As an initial matter, insofar as TD Auto has asserted "declaratory relief" as a standalone claim, that claim is dismissed. The Declaratory Judgment Act "is procedural only . . . and does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (cleaned up); *accord Norton v. Town of Islip*, 678 F. App'x 17, 22 (2d Cir. 2017) (summary order); *Miller v. Wells Fargo Bank,*

*N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) ("declaratory judgments . . . are remedies, not causes of action").  Notwithstanding TD Auto's procedural imprecision, the Court will assess the appropriateness of declaratory relief as a remedy for TD Auto's Section 1983 claim.

"[A] court may properly render declaratory judgment (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 432 (S.D.N.Y. 2002) (quotation marks omitted), *aff'd*, 346 F.3d 357 (2d Cir. 2003).  The declaratory judgment remedy permits parties "to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 66 (2d Cir. 2012) (quotation marks omitted).  "This does not confer a right on the parties to obtain a declaratory judgment, however; whether to award such relief remains within the discretion of the district court." *Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 66 (S.D.N.Y. 2018).

Applying these standards, the Court concludes that declaratory relief is appropriate here because, as explained above, the County's policies and procedures for seizing vehicles incident to arrest violate the Fourteenth Amendment procedural due process rights of lienholders. Awarding declaratory relief under these circumstances serves the useful purpose of clarifying legal relations and providing relief from uncertainty. *See, e.g.*, *Toyota Lease Tr.*, 2023 WL 4443992, at *12; *Am. Honda Fin. Corp.* (Revere), 471 F. Supp. 3d at 410 (granting declaratory relief where court determined state statute did not provide sufficient due process protections). Accordingly, the Court enters declaratory judgment in favor of TD Auto, and against the County, as follows:

28

The County of Putnam's policies, practices, and customs of impounding vehicles that have been seized in connection with felony arrests without providing prompt notice to any lienholders with interests in the vehicles, and without providing such lienholders with an opportunity to be heard at any time in connection with the seizure or potential release of such vehicles, violates the protection against deprivations of property without due process of law enshrined in the Fourteenth Amendment to the U.S. Constitution.

The Court will allow the County to revise its policies, practices, and customs consistent with this decision.  Ideally, the County would adopt formal written procedures to promote clarity and to ensure that appropriate due process protections are extended to all interested parties at every relevant stage.

### D.   Damages

Because the Court has concluded that summary judgment is warranted as to Count I, the Court must next turn to the question of damages.  The parties' submissions reveal, however, that there are material issues of fact with respect to the calculation of damages; accordingly, the Court cannot resolve the damages questions based on the summary judgment submissions.

TD Auto seeks three forms of damages: (1) return of the Vehicle; (2) compensatory damages based on the amount the Vehicle has depreciated while in the possession of the County; and (3) compensatory damages based on the hypothetical scenario in which TD Auto could have repossessed and auctioned the Vehicle and used the proceeds to reinvest in another retail installment contract.  Pl.'s Mem. at 27-28.

First, Count IV of the Complaint separately seeks "recovery of the vehicle in equity," and TD Auto's Prayer for Relief requests an order directing the County to unconditionally release the Vehicle to TD Auto.  Compl. ¶¶ 57-60 & Prayer for Relief ¶ D.  In the section of its opening brief addressing damages, TD Auto asserts that the County "remains in possession of the Vehicle, and should be ordered to return it upon a finding that it has no legal basis to continued possession."  Pl.'s Mem. at 27; *see also id.* at 6 ("part of the Courts' [*sic*] award must include an

order that Putnam release the Vehicle to TD Auto").  The County does not respond to this point

in its opposition to Plaintiff's motion, *see* Def.'s Mem. at 12-13, but notably, TD Auto does not

highlight the County's non-response in its reply brief, even though it references a different point

as to which it believes the County failed to respond, *see* Pl.'s Reply at 15.  Thus, while it appears

as though the County is not opposing TD Auto's demand for the return of the Vehicle, it is not

entirely clear from TD Auto's motion papers—which are styled as a motion for *partial* summary

judgment—whether TD Auto intended to seek summary judgment as to Count IV.  As a result,

the County did not have sufficient notice that it was required to offer arguments to prevent an

award of summary judgment as to Count IV.  Accordingly, the parties should be prepared to

discuss TD Auto's demand for recovery of the Vehicle at the next conference before the Court.

Second, as to depreciation, the County maintains that TD Auto's damages calculation is

"flawed, speculative, and not supported by admissible evidence."  Def.'s Mem. at 12.  The

parties agree that the Kelley Blue Book accurately reflects the value of used vehicles, but

disagree as to the amount by which the value of the Vehicle has depreciated according to the

Kelley Blue Book.  *Compare* Pl.'s 56.1 Statement ¶ 43 (asserting that the value of the Vehicle

depreciated by $4,316.00), *with* Def.'s 56.1 Resp. ¶ 43 (asserting that the value of the Vehicle

depreciated by $31.00).  The parties' submissions highlight two potential issues regarding the

calculation of damages based on the Kelley Blue Book information.  One is the lack of clarity in

the record concerning the Vehicle's starting value for purposes of measuring depreciation.  TD

Auto asserts that the proper timeframe to measure depreciation is between April 2021, which TD

Auto describes as the date of "Putnam's assessment of the Vehicle's value,"[12] and October 2022,

---

[12] Though TD Auto does not specifically explain the meaning of this phrase, it is possible
that it refers to the value of the Vehicle as stated in the Forfeiture Stipulation and Waiver signed
by Mr. Sutton on May 4, 2021.  *See* Duston Decl. Ex. 4.

shortly before TD Auto's motion for summary judgment was filed.  Pl.'s Mem. at 28 n.11.  The

County does not expressly contest this timeframe for measurement of depreciation, but even so,

the record is ambiguous as to the value of the Vehicle according to the Kelley Blue Book in

April 2021.  An email exchange between counsel reflects that the County was prepared to

stipulate that "the value of the vehicle *at the time it was seized*" (*i.e.*, in November 2020) was

$36,945.00, ECF No. 41 ("Duston Reply Decl.") Ex. A at 1, and a screenshot from the Kelley

Blue Book website submitted as part of TD Auto's motion papers appears to be dated November

2020, Duston Decl. Ex. 13.[13]  A second factual ambiguity regarding the depreciation valuation is

highlighted in the County's opposition submission, which notes that at least one input for the

comparative Kelley Blue Book values supplied by TD Auto—mileage driven—is substantially

different in the two documents provided to the Court, even though the Vehicle was impounded

during the depreciation period, and thus the mileage driven at the beginning and end of the

depreciation period should have been substantially the same.  *Compare id.* (noting mileage of

15,000), *with* Duston Decl. Ex. 14 (noting mileage of 44,426); *see* Def.'s Mem. at 12-13.  At a

minimum, these issues raise material questions of fact as to the Kelley Blue Book values offered

by TD Auto in connection with this motion, and preclude resolution of the depreciation damages

at this time.

Third, TD Auto asserts that had it recovered the Vehicle at the time of Mr. Sutton's

monetary default in December 2021, it would have been able to "auction the Vehicle and use the

proceeds to reinvest in TD Auto's business by taking another assignment of a different,

---

[13] In response to this statement from counsel for the County, counsel for TD Auto asked, "I assume the $36,945 is as of the day they seized the vehicle?  Or is it whenever Tracy happened to look it up a month or two later?"  Duston Reply Decl. Ex. A at 1.  The parties have not provided the Court with the answer to this question.

performing retail installment contract with a similar payment stream."  Gardiner Decl. ¶ 16.
Therefore, TD Auto calculates that in the approximately eleven months between December 2021
and the filing of the motion for summary judgment in November 2022, TD Auto would have
been paid $688.54 per month, or $7,573.94 total.  *Id.*

But this argument is flawed because it would appear to allow for double recovery by TD
Auto—*i.e.*, both the value of possessing the Vehicle, and the value of a separate income stream
derived from leasing a different vehicle purchased with the proceeds from auctioning the
Vehicle.  Further, TD Auto's counsel has made similar arguments as to its third theory of
damages on behalf of other lienholders in other recent cases within this Circuit, without success.
*See Toyota Lease Tr.*, 2023 WL 4443992, at *13; *Santander Consumer USA, Inc. v. Cnty. of
Nassau*, 623 F. Supp. 3d 6, 23-24 (E.D.N.Y. 2022).  As those courts have explained, "a
lienholder's property interest in a seized vehicle is its present value," and moreover, the plaintiffs
did not "cite any authority for the proposition that the scheduled payments under a security
agreement is a measure of damages arising from a due process violation."  *Toyota Lease Tr.*,
2023 WL 4443992, at *13; *Santander*, 623 F. Supp. at 23-24.  Likewise, here, TD Auto has not
come forward with any authority to support the even more attenuated proposition that the proper
measure of damages for a due process violation is what TD Auto would have been paid based on
a hypothetical future auction of the seized vehicle and a hypothetical future security agreement
involving a different vehicle.  Moreover, TD Auto offers a single paragraph of conclusory and
speculative assertions in a declaration about what it would have done if it had been able to
recover the Vehicle around the time of Mr. Sutton's monetary default, what it would have done
with the Vehicle, what it would have done with proceeds from the auction of the Vehicle, and
what income stream supposedly would have been available from taking assignment of a different

performing retail installment contract.  *See* Gardiner Decl. ¶ 16.  Even apart from the legal shortcomings in this damages theory, TD Auto has not provided anything close to a sufficient factual basis to award the type of damages that it seeks in this category.

In sum, the record before the Court is insufficient to determine as a matter of law the correct measure of damages owed to TD Auto.  The parties are hereby directed to meet and confer in advance of the next conference before the Court regarding the appropriate procedures for determining damages in this matter, and should be prepared at that conference to present a stipulation as to damages, or either a joint recommendation or competing proposals as to scheduling for the damages phase of this case.

## IV.      CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment (ECF No. 26) is GRANTED IN PART and DENIED IN PART, and Defendant's motion for summary judgment (ECF No. 33) is GRANTED IN PART and DENIED IN PART.  Specifically, summary judgment is granted in favor of Plaintiff as to Count I of the Complaint, and while the standalone "claim" in Count III of the Complaint is dismissed as procedurally improper, Plaintiff's request for declaratory relief is granted.  Summary judgment is granted in favor of Defendant as to Count II of the Complaint, and Count II is dismissed.

An in-person status conference is hereby scheduled for October 11, 2023 at 11:00 a.m. in Courtroom 250 in the White Plains federal courthouse to discuss damages, including the demand for recovery of the Vehicle set forth in Count IV of the Complaint, and other next steps.

Dated: September 27, 2023
        White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

34